```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION


MARY K. HATTON,                       :
                                      :
      Plaintiff,                      :
                                      :
v.                                    :     CIVIL ACTION 06-0851-M
                                      :
MICHAEL J. ASTRUE,[1]                 :
Commissioner of                       :
Social Security,                      :
                                      :
      Defendant.                      :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 11). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 15).  Oral argument was heard on June 18, 2007.  Upon consideration of the administrative record, the memoranda of the parties, and oral

---

[1]Effective February 1, 2007, Michael J. Astrue was confirmed by the Senate to serve as the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** to the Social Security Administration for further actions not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born September 7, 1949. At the time of the administrative hearing, Plaintiff was fifty-six years old, had completed a high school education (Tr. 45), and had previous work experience as a secretary and receptionist (Tr. 45). In claiming benefits, Plaintiff alleges disability due to bipolar disorder (Doc. 11 Fact Sheet).

The Plaintiff filed protective applications for disability benefits and SSI on February 4, 2004 (Tr. 95-98, 346-49; *see* Tr. 17). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Hatton was

disabled under the requirements of Listing 12.04, but that if she stopped abusing marijuana she would not be disabled (Tr. 14-32). Plaintiff requested review of the hearing decision (Tr. 12-13) by the Appeals Council, but it was denied (Tr. 6-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Hatton alleges that the ALJ improperly evaluated the issue of drug addition as being a contributing factor material to the determination of disability (Doc. 11).  Defendant has responded to—and denies—this claim (Doc. 12).

Plaintiff claims that the ALJ did not properly consider her marijuana addiction in finding that she was not entitled to disability benefits.  More specifically, Hatton asserts that the ALJ ignored the evidence provided by the examining physicians regarding the interplay of her marijuana use and her bipolar disorder (Doc. 11, pp. 20-29).

The Court notes, at the outset of this discussion, that the Contract with America Advancement Act of 1996 modified the Social Security laws to "preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." *Doughty v. Apfel*, 245 F.3d 1274, 1275 (11th Cir. 2001); *see* 42 U.S.C. § 423(d)(2)(C) (1997).  The *Doughty* Court held that the claimant "bears the burden of proving whether [he] would be

disabled if he stopped using drugs or alcohol." *Doughty*, 245 F.3d at 1275-76.  Under the social security regulations, an ALJ who has determined that a claimant is disabled and suffers drug addiction or alcoholism must then "determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. 404.1535(a) (2006).  In reaching this determination, "[t]he key factor . . . is whether the claimant would still be found disabled if he stopped using drugs or alcohol."  *Doughty*, 245 F.3d at 1279 (citing 20 C.F.R. § 404.1535(b)(1)).

The medical evidence of record regarding this issue is as follows.[2]  Dr. John R. Cranton, a psychiatrist, has treated Hatton since May 19, 1975, at which time he determined that she suffered from bipolar disorder; he has treated her regularly since July 2002 (Tr. 257, 274-76, 279-82).

On June 3, 2004, Dr. Cranton completed a mental residual functional capacity questionnaire in which he stated that Hatton's diagnosis was as follows:  1) Bipoloar I Disorder with history of mania and depression and 2) a history of marijuana use; he indicated that her prognosis was poor as she also had severe obstructive sleep apnea (Tr. 222-25).  The Psychiatrist indicated that she had borderline range of intelligence according

---

[2]The Court will not summarize all of the medical evidence herein, but only that relevant to this specific issue by Plaintiff's treating psychiatrist, Dr. Cranton.

4

to the Wechsler III.  Dr. Cranton said that she had an Affective Disorder characterized by a disturbance of mood which was accompanied by the following:  appetite disturbance (she overeats), sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of suicide in the past.  The doctor completed a functional assessment in which he indicated that she had marked restriction in activities of daily living, in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner.  Cranton further indicated that Hatton was markedly limited in her ability to understand, carry out, and remember instructions, respond appropriately to supervision and customary work pressures, and perform repetitive tasks.  The Psychiatrist stated that Hatton was totally disabled and had been for more than twelve months.  He also stated that she was not currently using marijuana, so it was not a contributing factor to her limitations.

Plaintiff's attorney questioned the Psychiatrist on March 30, 2005 about the interplay of her disorder and her use of marijuana; his responses, by way of deposition, are as follows:

> Q.  Now, in your records you indicate that at one time she was a heavy marijuana user.  She does not use this drug at the

present time.
    Is there any relationship, or pattern, if you will, of behavior with individuals who have been diagnosed with manic depressive disorder, bipolar disorder and drug use, drug or alcohol use?

    A.  The relationship of drugs like marijuana and cocaine, those kind of drugs, and especially those that feed into what we call the dopamine part of the activity of the brain, people who suffer from a bipolar disorder may be prone to use or abuse drugs whether they're either legal or illegal.
    The other thing is that can occur, too, is that not infrequently patients who may have a predisposition towards the development of a bipolar disorder, they may not show signs of a bipolar disorder until they get into the use of illegal or legal drugs.
    And so basically what I think we're seeing with Mary is probably a young lady that would have developed a bipolar disorder anyway.  And I think that in her situation, I think it's a matter that marijuana probably has aggravated her bipolar disorder.  But they have fed into each other, I think.

    Q.  Now --

    A.  And let me say this much, too.

    Q.  Sure.

    A.  A lot of times, because of marijuana's relationship to the dopamine activity of the brain, sometimes people who are prone to depression, which she is, may use marijuana as a means of helping their mood.

    Q.  Would that be the same as self-medication?

    A.  It would be what you would call self-medication, which is not an uncommon occurrence with this illness.

\*\*\*

    Q.   Currently, is her diagnosis still the bipolar disorder that you referred to?

    A.   I would say bipolar disorder complicated by the fact that she had used marijuana.

    Q.   Let me ask you about some of your more recent records, particularly before you had sent her to Dr. Koch for the psychological evaluation.
    You made some references that she seemed to be stable, doing as well as can be expected, that she wasn't — her mood seemed to be okay.  But then you sent her to Dr. Koch.  When you say that she was doing relatively well, or she was stable, how should that be interpreted?

    A.   Well, I think it needs to be interpreted within the context of her basic condition.  I see many many many patients, for example, that are working on a regular basis that are relatively stable and able to hold down a job.
    But I also see many many people who are permanently and totally disabled that are relatively stable within the context of what they're able to do or not do at that time.
    Whenever I dictate and say that the condition is stable, and they're adequately controlled on medication, I'm not addressing their ability either to work or not work.  If they're already working and in a job, and are holding the job down, and they're doing fine, well, that can be considered stability.
    If they're not holding down a job, and they're permanently and totally disabled, well, that in and of itself, one could say that if you're not seeing any fluctuations in their behavior or their mood or condition, or problems from their medicines, you could also say that their condition is relatively stable.

  Q. Okay.

  A. My basic observations with regards to Mary when I was commenting on the fact that I felt that her condition was relatively stable and she was adequately controlled on medicine, she was not having any adverse effects from the medicines; she was getting maximum benefit from the medicines.
  I could see no reason to change or adjust the medicines.  And with regards to her adjustment at home, I felt like that she was relatively stable in that situation.  She was getting along with her husband.  There was no problem there.
  When she lost her job, I think probably just by my very very actions and concerns as to what was going on with her at that point are reflected in the decisions that I made.
  I made basically two very important decisions which I thought were consistent with what was going on with her.  Number one was to refer her to vocational rehabilitation and to get their opinion as to what they thought.  That was one of the first things that I did.
  The other thing I did, I sent her to Dr. Koch, who had the ability to do some psychological testing on her which could be more exquisite, more precise and more definitive as to whether this lady was capable of really holding down a job or not.

  Q. Okay.

  A. I think Dr. Koch is an excellent psychiatrist.[3]  He does good neuro-psychological testing.  He gave me what I felt I needed to know in order to make my recommendations and suggestions to her.  And he came back with the opinion that this lady was not able to work, that she was permanently and totally disabled.  And I agree with that.

---

[3] The Court takes judicial notice that Koch is actually a psychologist and not a psychiatrist (*see* Tr. 193-96).

8

    And within the context of her permanent and total disability, I think it's very easy to say that with regards to her medicines and her adjustment with her husband, that she's relatively stable in that respect.
    Now, there still is the problem as to whether she might resort to using marijuana or not, which has been kind of a chronic problem for her.
    So If I had to say if there's any one area of real instability, it would be dependent upon whether she would go back and smoke pot or smoke marijuana or get into any kind of illegal drug.

\*\*\*

    Q.  Now, you've indicated in your records, and also throughout this deposition, that you felt like that she was permanently and totally disabled.

    A.  Yes.

    Q.  Permanent is a term that has a tone of finality to it.  Why do you feel that way?

    A.  Well, because it's been obvious to me that I've seen, in looking over her work record and looking over her illness and looking at how she was when I initially saw her many many years ago, and how she is today, and even while under my care, that there has been this inability to hold down a job, you know, where she was obviously being criticized and expected to perform a certain way, and was not.
    Having seen her pattern of decline, so to speak, in the work situation, it leaves me to believe, even though her medicines are working as well as they can be expected, even though her family situation is okay, I'm led to believe that she is at a level of performance at this time with regard to employability that she would not be able to hold down a job either on a permanent basis at all and on a total basis.  She just is not

>     able to work in a work situation, I think,
>     consistently.
>
>          Q.  Okay.  And do you feel this way
>     about her as if she's not using any drugs,
>     including marijuana?
>
>          A.  I don't think — I think at this
>     particular point she's not using marijuana
>     like she used to years ago.  If she's using
>     it, I'm certainly not aware of it.
>          But even given that, I don't think —
>     even if I was sure one hundred percent — and
>     nobody is ever sure one hundred percent when
>     you're dealing with these drugs — even if she
>     was not using it one hundred percent for
>     sure, I still believe that her illness and
>     where she is today, I don't think she could
>     ever hold down a job.

(Tr. 280-302).

The ALJ assigned determinative evidentiary weight to Dr. Cranton's opinions[4] for purposes of finding Plaintiff disabled under Listing 12.04 (Affective Disorders) (Tr. 24).  The ALJ rejected these conclusions, however, for purposes of awarding disability benefits, finding that Dr. Cranton's observations were "based on an erroneous assumption" (Tr. 30).  His reasoning was as follows:

>     Dr. Cranton testified that the claimant's
>     marijuana use aggravated and complicated her
>     bipolar disorder, but he stated in the Mental

---

[4]The ALJ also assigned determinative evidentiary weight to the opinions of examining psychologist Dr. Davis and examining psychiatrist Dr. Smith (Tr. 24).  The Court, however, finds it unnecessary to summarize those reports for purposes of this decision, but notes, for purposes of remand, that these decisions should be considered again as well.

> RFC Questionnaire that drug abuse was a
> contributing factor material to the
> functional restrictions and limitations
> reflected in the questionnaire.  It is noted
> that the question posed to Dr. Cranton on
> this issue specifically asked about the
> claimant's "current" drug abuse.  However,
> even though the claimant, by her own
> admission was using marijuana at the time Dr.
> Cranton completed the form, Dr. Cranton
> assumed that she was no longer using the
> substance.  Since Dr. Cranton's opinion was
> based on an incorrect factual assumption,
> this renders his opinion on the issue
> irrelevant.

(Tr. 30).  The ALJ relied, instead, on the opinion of a non-examining State agency psychological consultant, Dr. Ellen Eno in determining that Hatton would not be disabled if she were not using marijuana (Tr. 30).

The Court notes that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  On the basis of *Swindle* alone, the Court finds that the ALJ's reliance on Dr. Eno's opinions is misplaced.

The Court further finds, however, that the ALJ improperly rejected the opinions of Dr. Cranton.  In rejecting those conclusions, the ALJ pointed to the questionnaire.  In deposition testimony, though, the treating Psychiatrist unequivocally stated that Hatton was disabled whether she was using marijuana or not.

His specific statement was that "even if she was not using [marijuana] one hundred percent for sure, I still believe that her illness and where she is today, I don't think she could ever hold down a job" (Tr. 302).  Dr. Cranton's opinion seems to be fairly clear on this point.

The Court finds that the ALJ's failure to acknowledge this statement by the treating Psychiatrist is reversible error.  Also, as noted earlier, the ALJ's reliance on the opinion of a non-examining physician in reaching his determination cannot be found, by this Court, to be supported by substantial evidence.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the ALJ's determination be **REVERSED** and that this action be **REMANDED** for further action not inconsistent with the Orders of this Court, including, at a minimum, a supplemental hearing for the gathering of evidence regarding whether Plaintiff's use of marijuana is a contributing material factor to her disabling condition.  Judgment will be entered by separate Order.

DONE this 20th day of June, 2007.

<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE